ACCEPTED
04-14-00606-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/24/2015 2:25:45 PM
KEITH HOTTLE
CLERK

CASE NO. 04-14-00606-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
3/24/2015 2:25:45 PM
KEITH E. HOTTLE
Clerk

IN THE COURT OF APPEALS
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS

ARGO GROUP US, INC., COLONY MANAGEMENT SERVICES, INC., COLONY INSURANCE COMPANY, COLONY NATIONAL INSURANCE COMPANY, COLONY SPECIALTY INSURANCE COMPANY, COLONY AGENCY SERVICES, INC., AND ARGO GROUP INTERNATIONAL HOLDINGS, LTD.,

Appellants,

v.

LOUIS D. LEVINSON, INTERNATIONAL FINANCIAL GROUP, INC., GUILFORD SPECIALTY GROUP, INC., GUILFORD INSURANCE COMPANY, AND THE BURLINGTON INSURANCE COMPANY,

Appellees.

Appeal from the 221st Judicial District Court, Bexar County, Texas
District Court Cause No. 2014-CI-09550
Hon. Antonia Arteaga, Presiding

APPELLANTS' REPLY TO APPELLEES'
RESPONSE TO MOTION FOR REHEARING

TO THE HONORABLE COURT OF APPEALS:

Appellants (collectively, "Argo"), in reply to Appellees' Response to Appellant's Motion For Rehearing, state the following:

### 1. Appellees concede that Argo sought an equitable extension.

IFG and Levinson admit, as they must, that Argo sought an equitable extension of Levinson's noncompetition covenant in the district court. Appellees' Resp. at 2 and 10. This admission, and the record references in Appellants' Motion for Rehearing, establish that Argo requested an equitable extension in the trial court. This Court's contrary conclusion thus was erroneous.

### 2. *Weatherford Oil* does not dictate the outcome of this case.

Argo sought an equitable extension of Levinson's restrictive covenant because, when it discovered his violations, the end of the covenant's term was approaching. The request for an equitable extension presented a ripe controversy when the trial court heard Argo's application for a temporary injunction and it continues to present a ripe controversy, as Argo seeks reversal of the erroneous denial below.

IFG and Levinson nonetheless continue to assert that this case is moot under *Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d 950 (Tex. 1960).[1] Contrary to Appellees' assertions, *Weatherford Oil* does not establish a broad rule of law under

---

[1] Appellees cite *Holiday Hill Stone Prods., Inc. v. Peek* as a case that purportedly held an appeal was moot due to the expiration of a noncompetition covenant. Resp. at 6. The case holds nothing of the sort. The trial court in *Holiday Hill* reformed a restrictive covenant by shortening the term from three years to one. 387 S.W.2d 731, 732 (Tex. Civ. App.—San Antonio 1965, no writ). Despite the expiration of the shortened one-year term, the appellate court considered the case on the merits, holding that the trial court did not abuse its discretion by shortening the term. Contrary to Appellees' representation, the appellate court *did not* deem the appeal moot because the one-year term had expired while the appeal was pending.

471601v1
65397.00115

which every kind of claim related to a noncompetition covenant is moot once the contract's stated term ends.

*Weatherford Oil* holds only that the claim at issue there—one to make a restrictive covenant enforceable by reducing its scope—was moot because the covenant expired while the appeal was underway. This makes sense because reducing the scope of an expired covenant would be pointless. However, this decision does not mean that a party no longer can pursue an equitable extension if the contract expires while litigation over that relief is ongoing.

This follows from the definition of mootness. "A case is moot if there are no live controversies between the parties and any decision rendered by the court would be an advisory opinion." *Wassmer v. Hopper*, __ S.W. 3d __, 2014 WL 6865445, *10 (Tex. App.—El Paso Dec. 3, 2014, no pet.). Similarly, "[a]n issue is moot if either a party seeks a judgment on a controversy that does not really exist or a party seeks a judgment which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy." *Id.*

The last formulation describes *Weatherford Oil*—a judgment reforming the expired covenant to make it enforceable in scope could not have had any practical legal effect once the contract's term had ended.[2] That simply cannot be said here,

---

[2] This is particularly so since *Weatherford Oil* holds that a claim for damages for breach of a restrictive covenant must stand or fall on the covenant's original, unreformed language. 340 S.W.2d at 953.

3

since a temporary injunction equitably extending the restrictive covenant at issue would have a practical effect—it would restrain Appellees from continuing to benefit from the breach of Levinson's contract. And, logically, the expiration of a restrictive covenant while a request for equitable extension is pending should not cut off that remedy. Indeed, a request for an equitable extension implicitly assumes that the contractual period will expire before equity demands that it should.

Nor is this a game of labels. Appellees, apparently having scoured the entire nation's decisional law, found three opinions that use the word "reform" while discussing equitable extension. So? The use of the word in these cases does not change the fact that there is a fundamental difference between a claim to enforce a restrictive covenant through an equitable *extension* of the restriction's duration and a claim to reform the contract in order to make it enforceable for a *shorter* term or with a more *limited* scope. In the latter instance, reformation would be pointless once the contract has expired. On the other hand, in the former example (as in the case at bar), the requested relief can be granted despite the expiration of the stated contract term and the claim is not moot. The cases cited in Appellants' brief on the merits—including *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459 (5th Cir. 2003)—make this principle plain.

4

Properly read, *Weatherford Oil* stands only for the proposition that the claim for reformation of the unenforceable covenant at issue there became moot once the contract's term expired. The decision does not so much as mention equitable extension as a remedy for breach of an enforceable covenant, let alone hold that a claim for such relief is moot after the original contract term ends or that no such relief can be granted under Texas law.

### 3. Appellees' legal arguments are wrong.

Appellees point to several cases in which requests for injunctive relief became moot. Appellees' Resp. at 4-6. However, a reading of those cases shows they are of no help to IFG and Levinson.

Most of the cited cases concern efforts to enjoin a discrete event—the construction of a building in *Zuniga v. U.S. Investors, Inc.*; the killing of deer ("herd reconciliation") in *Johnson v. Texas Parks & Wildlife Dep't*; and the demolition of a building in *Toudouze v. Urban Renewal Agency of San Antonio*. In these cases, the appellate courts recognized that they could not "unring" a bell. No matter the merits, a court cannot prevent the construction of a completed building, halt the demolition of a demolished building, or revivify deceased deer. As a result, once the event sought to be enjoined was complete, the courts could do nothing in these cases.

5

But such cases do not apply here because Argo does not seek to enjoin an event like the execution of a deer. Argo seeks an injunction equitably extending Levinson's noncompetition covenant for one year, not simply an injunction keeping him from *beginning* to work at IFG. The object of the injunction is not a discrete event; the challenged conduct is ongoing and can still be halted. Accordingly, the deer in this case are not dead, and the fact that Levinson went to work for IFG after the temporary injunction was denied does not moot Argo's claims.[3]

If a claim for injunctive relief to enforce a noncompetition covenant were to be deemed moot once the employee begins his new job, then it would be impossible to enforce such a covenant or to appeal a trial court's order refusing to do so. When a temporary injunction is denied in such a setting, the employee naturally begins or continues working for his or her new employer. Nonetheless, the erroneous denial of a temporary injunction in such a setting is reviewable by interlocutory appeal. *See, e.g., EMS USA, Inc. v. Shary,* 309 S.W.3d 653 (Tex.

---

[3]    In one of the cases on which IFG relies, *Zuniga v. U. S. Investors, Inc.,* the court noted that the relief sought in the trial court was only the prevention of construction of a building, not its operation as a nursing home. *See* 453 S.W.2d 811 (Tex. 1970) ("We find nothing in the record to indicate that petitioners sought the temporary injunction for any purpose other than to prohibit the building and construction of the nursing home."). This implies that the case would not have been moot had the plaintiff sought other relief, such as an injunction against operation of the nursing home.

6

App.—Houston [14th Dist.] 2010, no pet.); *Tranter, Inc. v. Liss*, 2014 WL 1257278 (Tex. App.—Fort Worth 2014, no pet.) (not designated for publication).

Appellees also claim Argo seeks to "upset the *status quo*." Resp. at 2. Not so. "The 'status quo' to be preserved by temporary injunction is 'the last, actual, peaceable, noncontested status which preceded the pending controversy.'" *Transp. Co. of Texas v. Robertson Transports, Inc.*, 261 S.W.2d 549, 553-54 (Tex. 1953). The pertinent *status quo* in this case is the state of affairs that existed *before* Argo filed suit, with Levinson bound by his covenant not to work for IFG, not the one subsequent to the denial of the temporary injunction. Accordingly, the requested equitable extension would preserve the relevant *status quo*, not upset it.

If the Court were to turn Argo away because it seeks to "upset" the altered *status quo* that arose after the trial court's ruling, it would be impossible to appeal the denial of such a temporary injunction. Absent restraint, a defendant most often will proceed with the acts that the plaintiff sought to enjoin after a temporary injunction is denied. If the denial of a temporary injunction cannot be reversed because doing so would "upset" the post-denial *status quo*, then there would be no meaningful right to appeal such a denial.[4]

---

[4] Appellees' citation to *Gaylord Broadcasting Co. v. Cosmos Broadcasting Corp.* (Resp. at 10) is amusing in light of their elsewhere-professed disdain for cases not decided under Texas law. Though Appellees do not admit it, *Gaylord Broadcasting* "was applying Louisiana law . . . not Delaware or Texas law, and was interpreting a First Circuit opinion applying Massachusetts law." *Nationsbuilders Ins. Services, Inc. v. Houston Intern. Ins. Group, Ltd.*, 2013 WL 3423755,

7

471601v1
65397.00115

A recent decision, *Nationsbuilders Ins. Services, Inc. v. Houston Intern. Ins. Group, Ltd.*, is factually similar to the case at hand, and illustrates the appropriate analysis.[5] 2013 WL 3423755 (Tex. App.—Dallas 2013, no pet.) (not designated for publication) Considering facts very close to those in this case, the Fifth Court of Appeals rejected a mootness argument like that advanced by Appellees here, holding that a claim for equitable extension of a noncompetition covenant was not moot despite the end of the contract's term. *Id.* at *7.

*Nationsbuilder* concerned a restrictive covenant with a duration from May 4, 2011 to May 4, 2012. In January 2012, the employer initiated an arbitration alleging that the former employees were breaching the restrictive covenants. On May 31, 2012, the arbitrator ruled that the former employer had been deprived the benefit of its bargain with its former employees and determined that the benefit of the bargain should be restored by an equitable extension of the restricted period for twelve months. *Id.* at *2.

The former employees persuaded a trial court to vacate the arbitrator's award. On appeal from that ruling, the Fifth Court of Appeals ruled that the trial

at *7 (Tex. App.—Dallas 2013, no pet.) (not designated for publication). The case is of little relevance here.

[5] *Nationsbuilders* is precisely the type of case that Appellees argue does not exist—one in which a court equitably extended a restrictive covenant beyond its stated term and required former employees to stop working for their new employer. Though decided in part under Delaware law, the analysis of the issues is instructive.

471601v1
65397.00115

court erred in vacating the arbitrator's award, including its finding of mootness:

> Appellees assert that enforcement of the restricted period became moot when the period expired under the terms of the contract . . . . Appellees rely on cases holding that a suit for specific performance of a noncompetition covenant is moot after the contractual period of the covenant expires. *See e.g.* [citations omitted]; *Weatherford Oil Tool Co.*, 340 S.W. 2d 950, 952-53 (Tex. 1960) (Texas law)." However, the arbitrator's award was not one of specific performance of the noncompetition provision; the award was an equitable extension of the restricted period under the arbitrator's powers of equity. Delaware law permits a court to extend the period of a covenant not to compete when necessary to prevent a party from being deprived of the benefit of the covenant. [citation omitted]. The concept of equitable extension has also been recognized under Texas law. *See Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003).

*Id.* at *6.

As in *Nationsbuilder*, this Court should rule that the breach of Levinson's restrictive covenants deprived Appellants of the benefit of their bargain and therefore an equitable extension of the non-compete period is warranted to "restore the benefit of the bargain." Without such a ruling, Appellees will be rewarded for their subterfuge which was not uncovered until late in the non-compete period and will encourage such future behavior by others.

### 4. Conclusion.

Appellees have consistently pursued a "we got away with it" approach to their misconduct. The claim that this appeal is moot is but another shade of that

9

471601v1
65397.00115

approach, and it should be rejected.  Instead, this Court should recognize that a live controversy exists, address it on its merits, and reverse the ruling below.

Respectfully submitted,

Jonathan D. Pauerstein
State Bar No. 15637500
Stephen K. Lecholop II
State Bar No. 24070119
ROSENTHAL PAUERSTEIN
SANDOLOSKI AGATHER LLP
755 East Mulberry, Suite 200
San Antonio, Texas 78212
Telephone:  (210) 225-5000
Facsimile:  (210) 354-4034
jpauerstein@rpsalaw.com
slecholop@rpsalaw.com

**ATTORNEYS FOR
APPELLANTS**

10

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that the foregoing document was served on each person listed below by facsimile and in accordance with the Texas Rules of Appellate Procedure on March 24, 2015:

Julia Mann
Jackson Walker L.L.C.
112 E. Pecan St., Suite 2400
San Antonio, Texas 78205
Fax: (210) 242-4646

Anthony Herman
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Fax: (202) 778-5280

Lawrence Morales II
The Morales Law Firm, P.C.
115 E. Travis #1530
San Antonio, Texas 78205
Fax: (210) 501-0786

Stephen K. Lecholop II

11

471601v1
65397.00115